PLUMMER *v*. SCHOOL DISTRICT NUMBER 1 OF MARIANNA.

Opinion delivered April 26, 1909.

1. GARNISHMENT—SCHOOL DISTRICT.—A school district is not subject to garnishment in an action at law. (Page 239.)

2. EQUITABLE GARNISHMENT—PRIORITIES.—Where a school building has been completed, and the contractor is insolvent, his creditors may sue the school district in equity to subject funds in its hands belonging to such contractor, and liens will accrue in favor of the several creditors from the time and in the order that their several suits are commenced. (Page 240.)

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

STATEMENT BY THE COURT.

The appellants, Plummer & Davis, O. C. Sutton, M. Lesser, Twen-Cen Granite Company and Hays & Sturdivant filed their suits in the Lee Chancery Court, alleging that the defendants, C. A. Alstead and G. B. Thomason, were indebted to them in various sums on account of material furnished to the defendants as contractors engaged in the erection of a school building for the defendant, Special School District No. 1 of Marianna; that the

said school district was indebted to the said Alstead & Thomason in a sum greater than the amounts sued for; that the said defendants, Alstead & Thomason, were insolvent; that the plaintiffs had no remedy at law by which they could obtain satisfaction of their debt; and praying for judgment against the defendants in various sums set out in their complaints, and further praying that the said school district be required to answer as to what sum of money it was indebted to Alstead & Thomason, that the said sum of money be impounded and garnished, and that a lien be declared and established against the same in favor of the plaintiffs, and that the said school district be required to pay such judgment as might be recovered against the defendants, Alstead & Thomason.

On the 30th day of April, 1906, the appellants H. W. Paslay, J. T. Johnson and —— Brewer also filed their complaint, setting up substantially the same facts and asking the same remedy against the defendants, Alstead & Thomason and the school district. On the 22d day of May, 1906, G. H. Vineyard filed a similar suit for $71.25. On May 27, 1906, L'Anguille Lumber Company filed its suit for $709.40, alleging substantially the same facts, and on the 22d day of May, 1907, the Coffeyville Brick Company brought suit for $952.81, alleging substantially the same facts as set forth in other complaints.

The school district answered and denied that it was indebted to Alstead & Thomason in any amount, but alleging that the said school district had complied in every way with the contract, that the same provided for liquidated damages of $25 per day for all the days that the said school building remained incomplete after the time mentioned in the contract, and that the said Alstead & Thomason were indebted to the school district in the sum of $669, and that the said school district was not indebted to the said Alstead & Thomason in any sum whatever.

The causes were consolidated and heard upon the pleadings and depositions in the various cases. On the 27th of May, 1907, a decree was rendered, finding that the said school district was indebted to the contractors, Alstead & Thomason, in the sum of $1,730.08, and finding also the amount of indebtedness from Alstead & Thomason to the various plaintiffs as follows: To Plummer & Davis, $746.71; to O. C. Sutton & Company, $94.70;

to Twen-Cen Granite Company, $197.99; to Hays & Sturdivant, $94.20; to Paslay & Johnson *et al.*, $325; to —— Brewer, $126; to G. H. Vineyard, $71.25; to L'Anguille Lumber Company, $709.40; and Coffeyville Brick Company, $952.81.

On the 20th day of May, 1908, the plaintiffs, Plummer & Davis, O. C. Sutton & Company, Twen-Cen Granite Company, and Hayes & Sturdivant filed their motions and petition in said court, asking that they be declared entitled to priority in the distribution of said fund, alleging and showing that their actions were filed prior to the actions of any other of the plaintiffs, and were for the purpose of impounding, garnishing and attaching the funds in the hands of the School District of Marianna.

The plaintiffs Paslay & Johnson and Brewer also asked to be made parties to the motion, and asked that they have priority in the distribution of the fund.

The court found that the plaintiffs Plummer & Davis, O. C. Sutton & Company, Twen-Cen Granite Company, and Hays & Sturdivant had filed their suit on the 10th day of May, 1906; that the other plaintiffs had filed their suits subsequent to said dates; that all of the debts sued for by all of the plaintiffs amounted to the sum of $3,632.01, and that the *pro rata* amount, if distributed among all the creditors, would amount to the said .476 per cent.

The decree directed that the funds in the hands of the clerk be distributed accordingly among all the creditors. Thereupon Plummer & Davis, O. C. Sutton & Company, Twen-Cen Granite Company, Hayes & Sturdivant, Paslay & Johnson and —— Brewer excepted and appealed.

*H. F. Roleson,* for appellants.

Since, under the rule laid down by this court, appellants could not bring an action at law and by that means enforce a garnishment against the directors (31 Ark. 387; 56 Ark. 451), they were compelled to await the completion of the building, when the public interest was no longer involved, and bring this equitable proceeding—an equitable garnishment—to reach the funds owing from the district to the contractors. The debt thus impounded may be subjected to the payment of the creditors's demands. 56 Ark. 457. It is an action similar to a creditor's bill.

and in such an action priorities are recognized.   38 Ark. 17.   It is well settled that the garnishments at law are subject to priorities.   18 Ark. 249; 40 Ark. 531; 66 Ark. 391; *Id.* 585; 80 Ark. 1.   See also 47 Ark. 221; 23 Ark. 287; 52 Ark. 297; 31 Ark. 656; Kirby's Digest, § 35; 56 Ark. 292.   The same principle obtains where the creditor is compelled to resort to the equitable proceeding.

P. D. McCulloch, for appellee.

The question of preferences here is not to be determined by the rules of law but of equity, a fundamental principle of which is equality.   1 Pomeroy, Eq. § 405; 11 Am. & Eng. Enc. of L. 186.   When a creditor's suit is brought against an insolvent debtor, equity will marshal the assets and apportion the fund among all the creditors *pro rata*, unless there are fixed liens at and before the time of the commencement of the suit. 1 Pomeroy, Eq. § 310.   Our statutes for the protection of contractors, material men, etc., provide that there shall be no preferences on account of time of filing or bringing suits to enforce liens, etc. Kirby's Digest, § 4979.

WOOD, J., (after stating the facts.)   In *Boone County* v. *Keck*, 31 Ark. 387, this court held that public municipal corporations are not subject to the process of garnishment.   The court said: "Public policy, indeed public necessity, requires that the means of public corporations, which are created for public purposes with powers to be exercised for the public good, which can contract alone for the public, and whose only means of payment of the debts contracted is drawn from the corporators by a special levy for that purpose, should not be diverted from the purposes for which it was collected, to satisfy the demands of others than the parties contracted with."   This was said in a case where the interests of a county were involved.   But the rule and the reason for it are the same in the case of a school district.   So that the appellants were remediless at law to have the funds in the hands of the directors applied to the payment of their debts against the contractors. They would be likewise without any remedy in equity, and for the same reason, if the question were one of diverting the public funds from the channel to which they have been turned by public authority.   But,

as the school building has been completed and the purpose consumated for which the fund was raised, the public interest can not be injuriously affected by further withholding the fund from distribution to those who are justly entitled to it.   No reason is assigned here on behalf of the school district why the creditors of the contractors should not come into equity to have the funds in the hands of the district subjected to the payment of their debt.   But for the public policy which forbids liens to be declared on public buildings, all those who had claims for labor done, materials furnished, etc., on the school building could have their liens declared on same and be on an "equal footing" under section 4979, Kirby's Digest.   But this doctrine of public policy forbids such procedure.   Then how are they to reach the fund which the district owes the contractor and which the contractor owes them?   In the absence of a statute giving them a lien upon the fund superior to that of the contractor, and making them to share *pro rata* in its distribution when impounded, their relation to the contractor is simply that of creditors, and they can only resort to the remedies common to creditors for the collection of their debts.   *Riggin* v. *Hillard,* 56 Ark. 476.   In the absence of legislation or contract affecting the status of the parties otherwise, their relation is simply this, the school district owes the contractors a certain amount which it has in its possession, and the contractors owe the various claimants who brought these suits the respective amounts that the court found due them.   Says Judge COCKRILL in the above case of *Riggin* v. *Hilliard:* "Every equitable proceeding wherein a remedy is devised to apply the debt of a third person to the extinguishment of the plaintiff's demand against his debtor is an equitable garnishment."   The complaints in this case, as in that, alleged insolvency of the contractors, and that no relief could be had at law, and other facts, which laid the proper foundation for a creditor's suit to subject the funds in the hands of the directors.   Therefore, as the plaintiffs in these various suits are nothing more nor less than simple contract creditors, the law governing the question of the priority of their respective claims is well established. "The lien obtained on the equitable assets of a debtor by a creditor's suit attaches thereto from the time of the service of process, or, as stated in some of the cases, on the filing of the bill

suing out of process." 12 Cyc. 64 F. note. The plaintiffs in these several suits had no lien before the commencement of their respective suits, either in law or equity, which they could enforce. But the commencement of their suits to subject the fund in controversy created the lien by equitable garnishment of the assets in the hands of the directors, and these garnishments are subject to priorities. *Watkins* v. *Field,* 6 Ark. 391; *Martin* v. *Foreman,* 18 Ark. 249; *Adams* v. *Penzel Gro. Co.,* 40 Ark. 531. See *Jones, McDowell & Co.* v. *Ark. Mech. & Agl. Co.,* 38 Ark. 17; *Little Rock T. & E. Co.* v. *Wilson,* 66 Ark. 585; *Green* v. *Robertson,* 80 Ark. 1.

Equity follows the law as to priority in garnishment proceedings. It follows that appellants Plummer & Davis, O. C. Sutton, M. Lesser, Twen-Cen Granite Company and Hays & Sturdivant, who filed their suits on the same day and obtained service at the same time, for aught that appears to the contrary, are entitled to preference in the satisfaction of their claims, and that Paslay & Johnson and Brewer, who made their complaint a general creditor's bill, and the subsequent claimants are entitled to share in the residue *pro rata.*

The decree is therefore reversed, and the cause remanded with directions to enter a decree in accordance with the opinion.