CITY OF HARTFORD *v.* STANLEY V. TUCKER
(5668)

BORDEN, STOUGHTON and FOTI, Js.

Argued March 2—decision released May 31, 1988

*Stanley V. Tucker,* pro se, the appellant (defendant).

*Richard M. Cosgrove,* deputy corporation counsel, with whom, on the brief, was *Christine E. Keller,* assistant corporation counsel, for the appellee (plaintiff).

FOTI, J. The defendant appeals from a judgment rendered in part for the plaintiff following a jury trial. The defendant claims that the court erred (1) in directing a verdict for the plaintiff on one count of the defendant's counterclaim for failure to state a cause of action, and (2) in improperly instructing the jury on the second count. We find no error.

This action was originated by the plaintiff city of Hartford (city) to collect taxes and interest allegedly due on certain real and personal property owned by

the defendant, Stanley Tucker. The parties entered into a stipulation, pursuant to which the city withdrew its entire complaint and Tucker withdrew the first count of his counterclaim. The case was tried to the jury on the second and third counts of Tucker's counterclaim. See Practice Book § 169. The city of Hartford filed an answer and two special defenses to Tucker's counterclaim.

This appeal has its historical roots in a judgment that was rendered in 1977.[1] In that judgment, the city was ordered to reduce the assessed value of certain property owned by the defendant. As a consequence of that court ordered reduction, the city owed the defendant $9381.57. Rather than reimburse the defendant, the city garnished that debt because the defendant owed the city back taxes and interest on other properties in the city in excess of the amount resulting from the overassessment.[2] On November 23, 1984, the defendant signed a partial satisfaction of judgment indicating that payment had been made, except for two amounts, $918.58 and $893.37. On that date, the city issued two checks, one for $918.58 and the other for $893.37. Those two checks were never cashed.

The first count of the defendant's counterclaims in this action alleged that the $9389.57 was exempt from garnishment, and that, because the city had illegally garnished the funds, the defendant was unable to pay utility bills to the Hartford Electric Light Company on his various properties. The failure to pay the utility bills resulted in a receiver of rents being appointed. The defendant further alleged that the receiver's failure to collect sufficient rents prevented him from making tax

---

[1] *Tucker* v. *Hartford,* Court of Common Pleas, Hartford County, No. 108945 (June 6, 1977).

[2] *Hartford* v. *Tucker,* Court of Common Pleas, Hartford County, No. 143605 (September 9, 1986).

and mortgage payments and resulted in a foreclosure action on his properties.

The second count of the counterclaim alleged that the city breached the terms of a stipulation which called for the release of the garnished funds once the defendant paid the taxes due on certain property he owned located at 65 Bulkeley Avenue, or once his equity interest in that property was foreclosed.

As directed by the court, the jury returned a verdict in favor of the city on the first count which alleged illegal garnishment. After deliberation on the remaining count, the jury returned a verdict for the defendant on that count in the amount of $2144.15, representing the sum of the two checks still outstanding from November 23, 1984, plus interest.

The defendant contends that the trial court erred in directing the verdict on the first count for failure to state a cause of action. He contends that the garnishment was illegal because General Statutes §§ 12-118[3]

---

[3] General Statutes § 12-118 provides: "Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court, and the pendency of such application shall not suspend an action by such town or city to collect no more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value

and 12-119[4] exempt from garnishment a refund owed to a taxpayer as a consequence of overassessment. We cannot agree.

is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[4] General Statutes § 12-119 provides: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

Taxes properly assessed by a town constitute a debt which may be recovered by suit or "any proper action in the name of the community." General Statutes § 12-161.[5] It has long been recognized that a foreign attachment; General Statutes § 52-329;[6] may properly be brought against a municipal corporation. *Prudential Mortgage & Investment Co.* v. *New Britain,* 123 Conn. 390, 391, 195 A. 609 (1937); *Bray* v. *Wallingford,* 20 Conn. 416, 419 (1850). There is nothing in the language of § 52-329 which is inconsistent with the provisions of §§ 12-118 and 12-119. Nor is there any language in those statutes which prohibits a town from garnishing funds as the city did here. We conclude that where a municipal corporation has incorrectly assessed property, has successfully collected those taxes, and has been ordered to refund the overpayment, the town may garnish those funds if the taxpayer is in arrears

---

[5] General Statutes § 12-161 provides: "All taxes properly assessed shall become a debt due from the person, persons or corporation against whom they are respectively assessed to the town, city, district or community in whose favor they are assessed, and may be, in addition to the other remedies provided by law, recovered by any proper action in the name of the community in whose favor they are assessed."

[6] General Statutes § 52-329 provides: "When the effects of the defendant in any civil action in which a judgment or decree for the payment of money may be rendered are concealed in the hands of his agent or trustee so that they cannot be found or attached, or when a debt is due from any person to such defendant, or when any debt, legacy or distributive share is or may become due to such defendant from the estate of any deceased person or insolvent debtor, the plaintiff may insert in his writ, subject to the provisions of sections 52-278a to 52-278g, inclusive, a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least twelve days before the return day, with such agent, trustee or debtor of the defendant, or, as the case may be, with the executor, administrator or trustee of such estate, or at the usual place of abode of such garnishee; and from the time of leaving such copy all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, and any debt, legacy or distributive share, due or that may become due to him from such executor, administrator or trustee in insolvency, not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover."

for taxes properly assessed on other properties owned by the taxpayer in the same town.

A directed verdict is not favored but is justified if, from the evidence, the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as directed. *Kegel* v. *McNeely,* 2 Conn. App. 174, 177, 476 A.2d 641 (1984). The defendant could not have prevailed on the ground that the garnishment was illegal. The first count, therefore, failed to state a cause of action. The court did not err in directing the verdict for the city on that count.

The defendant's second claim of error is that the court erred in telling the jury that it would not comment on the testimony of four of the defendant's witnesses because their testimony was irrelevant. The testimony offered by those witnesses related only to the defendant's first count which alleged the illegal garnishment of the tax receipts held by the city and consequential damages which resulted from that garnishment. In view of our conclusion that the court did not err in directing the verdict on the first count, we conclude that this claim is without merit.

There is no error.

In this opinion the other judges concurred.