HOLSTON UNION NAT. BANK, FOR USE OF ALLEN *et al.*, v. KNOX COUNTY.

(*Knoxville,* September Term, 1942.)

Opinion filed November 7, 1942.

SOUTHERN & SOUTHERN, of Knoxville, and HANSEL PROFFITT, of Sevierville, for plaintiff in error.

W. L. AMBROSE, of Knoxville, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit originated in the General Sessions Court of Knox County, wherein the plaintiff by garnishment sought to impound certain funds alleged to be due one Herbert Graf, who was employed as an architect to supervise the erection of a colored orphanage building and "Solway" school building. Plaintiff had a valid, unsatisfied judgment against the defendant Graf in the General Sessions Court for $935 and execution was issued in said cause to L. A. Farrell, a deputy sheriff, which was returned April 17, 1941, to the effect that he was unable to find any personal property of the defendant debtor sufficient to satisfy said execution. He thereupon levied a garnishment upon Knox County, service of written notice being had upon Sam O. Houston, County Judge. At the hearing the General Sessions Court rendered judgment for the garnishee. An appeal was taken to the Circuit Court. The partinent facts are shown in the following stipulation:

## "Stipulation

"Herbert Graf, operating as R. F. Graf & Sons, is a licensed architect. On January 8, 1940, he entered into a contract with the building committee of the Knox County Colored Orphanage as supervising architect for the erection of the building which was estimated to cost approximately $35,000. He was to provide all drawings and specifications, assist in the awarding of all contracts, supervise the construction of the above designated work, and to perform all customary architectural and engineering services required, etc. He was to receive as compensation six per cent of the total cost of the work, payable as follows: Upon completion of the preliminary studies required, one-half of one per cent. Upon the com-

pletion of the general working drawings, an additional
one per cent. Upon the completion of specifications and
general working drawings, two and a half per cent of the
estimated cost. From time to time during the execution
of the work and in proportion to the amount of services
rendered, payments shall be made until the aggregate
of all payments shall be a sum equal to the rate of com-
mission arising from this agreement computed on the
final cost of the work.

"Article III provides that if the project cannot be
financed, etc., and the work is abandoned, the architect
will receive only the one-half of one per cent and the
agreement shall be null and void.

"The foregoing is the substance of the contract be-
tween Graf and the building committee. It is further
stipulated that on January 13, 1941, Graf secured a loan
from the Park National Bank of $1200, evidenced by note,
and assigned $1400 due his firm for services as architect
in drawing the plans and specifications, said assignment
being accepted by the County Judge. The assignment
recites that said sum had heretofore been earned. All
parties agreed that the assignment was duly executed
and that the amount was legally due. The said assign-
ment covers the initial provision of one-half of one per
cent of the estimated cost and two and a half per cent
provided on completion of specifications and general
working drawings, making a total of four per cent of
the estimated cost of $35,000. This leaves an estimated
balance of $700 or two per cent under the terms of the
contract, subject to the determination of the correctness
of the estimate of the total cost. Separate and apart
from the foregoing, the Knox County Board of Education
authorized Graf to finish four rooms at Fountain City
and erect a new school building at Solway, the compen-

sation to be the usual architect's fee of six per cent, said fee to be made available from county funds from a bond issue and funds made available to Knox County from the W.P.A. The new school building was not to cost in excess of $30,000 and the estimate was $27,000. On this estimate the fee will be $1650. On August 7, 1940, Graf was paid $875. On April 24, 1941, he was paid $275. Said payment was made, not out of school funds, but out of the W.P.A. bond count.''

Under the foregoing agreed statement of facts the Circuit Judge found in favor of the defendant Knox County and the case dismissed. He later overruled a motion for a new trial. The action of the trial judge is assigned as error. There are a number of assignments, all going to the legality of the judgment. As we view the case, it is unnecessary to pass upon the validity of the assignment to the Park National Bank, or that the funds available and out of which the architect was to receive his compensation were or were not under the control of the garnishee Knox County. It does appear, however, from the school warrant of $275 that the County Board of Education handled the school fund for making repairs and for the erection of a new school. Process was served on the County Judge and not the County Board of Education. The stipulation fails to show that at the time of the service of garnishment upon Sam O. Houston, County Judge, etc., the projects, the erection of the colored orphanage, the building of the new school at Solway, and finishing the four rooms at Fountain City, were completed. In fact, it shows they had not been completed and accepted. It is true that the $1400 assigned to the Park National Bank was earned and due, and we assume that the $275 paid Graf was also due. It was paid by the County Trustee between the date of service of garnish-

ment and the date of the answer upon a warrant issued by the Board of Education. While it is not important in reaching a correct conclusion in this case, there is nothing in the stipulation to show that the County Judge knew of the issuance of said school warrant or that he had any authority to prevent its issuance. The said Graf was not an employee of Knox County or the County Board of Education. He was an independent contractor. We find that, under his contract with the county and school board, Graf was to be paid "from time to time" until the work was completed. The total amount of his compensation could not be ascertained until the projects were finally completed and accepted. We think it is important to note that Graf had not executed any bond to insure the fulfillment of his contract. There would be no doubt about the liability of a county where there is a balance due upon a contract that had been completed and accepted. The question was settled by this Court in *Wheeler* v. *Walter J. Bryson Co. et al.*, 162 Tenn., 163, 35 S. W. (2d), 391. Mr. Justice CHAMBLISS, speaking for the Court in that case, pages 166, 167 of 162 Tenn., page 392 of 35 S. W. (2d), says: "However, whether or not the term 'employee' used in the act may be fairly treated as including the defendant contracting corporation, we are persuaded that the chancellor was justified in construing the passage of the act [chapter 29, Acts of 1921] as indicative of legislative intention to abrogate broadly the rule extending exemption from garnishment to municipal corporations, having in mind changed modern conditions, and the rights of creditors to enforce payment of their just debts."

This Court, however, held that the rule of exemption is still recognized where the judgment creditor seeks to garnishee a municipality for money due or to be paid

under an uncompleted contract, Justice CHAMBLISS quotes with approval a statement by Chief Justice WILLIE in *City of Laredo* v. *Nalle*, 65 Tex., 359, as follows: "Public policy may demand that a fund set apart for erecting a public building, *should not be taken for the debt of the person contracting to do the work during the progress of its construction, for this may prevent its completion.* But when the work is finished and the money earned, and standing to the credit of the contractor with the city, it should be subject like any other property to the payment of his debts." (Italics ours.)

There is also a quotation from *Portsmouth Gas Co.* v. *Sanford,* 97 Va., 124, 33 S. E., 516, 45 L. R. A., 246, 75 Am. St. Rep., 778, wherein it was said: "Upon the facts of this case little inconvenience and no prejudice can result to the city of Portsmouth by holding it liable to garnishment. The work undertaken by the defendants for the city has been *completed.* The city has retained, upon notice of the plaintiff's claim, a sum sufficient to meet its demand." (Italics ours.)

 It is plainly to be seen that the old rule exempting counties and municipalities from garnishment has not been entirely abrogated. It is still upheld as a sound rule where "the seizure by garnishment of a contractor's funds might prove an embarrassment to the public." In the instant case the service of garnishment upon Knox County to impound funds due and that may become due, under Graf's contract, might seriously interfere with the completion of projects that are recognized as vital to the public interest. He might never finish these projects due to unforeseen circumstances and conditions, and besides the county may owe him nothing if and when the projects are completed. We think a county or municipality should have and does have the lawful right to withhold funds

that may be due an architect, contractor, or any person employed to make public improvements until the same are completed and accepted, in order to indemnify itself against loss and damage caused by his failure to complete his contract, or by the way and manner in which the work had been performed. It can therefore be seen that it would be manifest error for the Court to enter a conditional judgment against the county for a sum more or less uncertain, and stay execution until the amount becomes due and payable, as contended for by the plaintiff. While it is the settled policy of the State to afford remedies for the collection of just debts, we cannot recognize the right of a judgment creditor to garnishee a political subdivision of the state under circumstances that might seriously jeopardize the completion of needed public improvements, such as school buildings, asylums, and orphanages. In thus holding, we in no way impair the right of a judgment creditor under the statute to issue a garnishment against counties and municipalities for sums of money due any of their officers and employees, or that may be due any contractor or architect employed to supervise and erect necessary public buildings or other improvements vital to the public interest *where such work has been completed and accepted.* The principle announced in *Cavender* v. *Hewitt,* 145 Tenn., 471, 239 S. W., 767, 22 A. L. R., 755, is reaffirmed.

The assignments of error are overruled and the judgment of the trial court affirmed.